CROSNER LEGAL, P.C.
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK HAYDEN individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOB'S RED MILL NATURAL FOODS, INC.,<br><br>Defendant. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. Defendant Bob's Red Mill Natural Foods, Inc. ("Defendant" or "Bob's Red Mill") sells two flaxseed products called Bob's Red Mill Whole Ground Flaxseed Meal and Bob's Red Mill Golden Flaxseed Meal (the "Products"). Defendant represents that the Products are healthy and made with non-toxic ingredients. Specifically, Defendant includes the following statements on the labels of the Products: "To Your Good Health," "You Can See Our Quality," "Non-GMO," and that consumption of Omega3 fatty acids in the Products "will promote good health."

2. Unfortunately, Defendant misleads consumers about the health benefits and quality of the Products and fails to disclose that the Products contain unsafe and unlawful levels of cadmium— a known human carcinogen that is linked to a myriad of health issues.

3. On January 12, 2023, the website ConsumerLabs.com published results of testing performed on various flaxseed products. Those test results revealed that the Bob's Red Mill Whole Ground Flaxseed Meal tested positive for 6.1 micrograms of cadmium and that the Bob's Red Mill Whole Golden Flaxseed Meal product tested positive for 5.5 micrograms of cadmium.[1] In California, products that test positive for more than 4.1 micrograms of cadmium must display a Proposition 65 warning label. However, Defendant fails to disclose the high levels of cadmium in the Products thereby deceiving consumers.

4. Worse yet, a company spokesperson for Bob's Red Mill seemingly admitted that Defendant does not test the Products for heavy metals like cadmium.  The spokesperson said, "Bob's Red Mill Products comply with all applicable laws and regulations, those laws and regulations do not require us to conduct our own testing for heavy metals."[2]

5. Plaintiff Mark Hayden ("Plaintiff") now brings this action seeking redress for Defendant's false adverting and deceptive conduct.

---

[1] Tod Cooperman, *Whole, Ground, Milled, and Cracker Flaxseed Review,* CONSUMERLABS.COM, *available at* https://www.consumerlab.com/reviews/flaxseed-whole-ground-and-milled/flaxseed-food/?search=Bob%27s%20Red%20Mill#whatclfound (last visited July 28, 2023).

[2] *Id.*

1

CLASS ACTION COMPLAINT

CROSNER LEGAL. P.C.

CROSNER LEGAL, P.C.

1

<u>**JURISDICTION AND VENUE**</u>

2        6.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §

3   1332(d) because this is a class action in which: (1) there are over 100 members in the proposed

4   class; (2) members of the proposed class have a different citizenship from Defendant; and (3)

5   the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of

6   interest and costs.

7        7.      This Court has personal jurisdiction over Defendant because Defendant conducts

8   and transacts business in the State of California, contracts to supply goods within the State of

9   California, and supplies goods within the State of California. Defendant, on its own and through

10  its agents, is responsible for the formulation, ingredients, manufacturing, labeling, marketing,

11  and sale of the Products in California, specifically in this district. The marketing of the Products,

12  including the decision of what to include and not include on the labels, emanates from

13  Defendant. Thus, Defendant has intentionally availed itself of the markets within California

14  through its advertising, marketing, and sale of the Products to consumers in California, including

15  Plaintiff. The Court also has specific jurisdiction over Defendant as it has purposefully directed

16  activities towards the forum state, Plaintiff's claims arise out of those activities, and it reasonable

17  for Defendant to defend this lawsuit because it has sold harmful Products to Plaintiff and

18  members of the Class in California. By distributing and selling the Products in California,

19  Defendant has intentionally expressly aimed conduct at California which caused harm to

20  Plaintiff and the Class which Defendant knows is likely to be suffered by Californians.

21       8.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because

22  Defendant engages in continuous and systematic business activities within the State of

23  California. Venue is further proper pursuant to 28 U.S.C. §1391(b) because a substantial part of

24  the events or omissions giving rise to the claim occurred in this District because Plaintiff

25  purchased one of the Products within this District.  Venue is also proper in this District pursuant

26  to Cal. Civ Code. § 1780(c) because Defendant is doing business in this District, and Plaintiff

27  purchased a Product at issue in this District.

28

CROSNER LEGAL, P.C.

## PARTIES

9.     Defendant Bob's Red Mill Natural Foods, Inc. is an Oregon corporation that maintains its principal place of business at 13521 SE Pheasant Ct., Milwaukie, Oregon 97222. Throughout the Class Period defined herein, Defendant was the manufacturer and distributor of the Products.

10.     Plaintiff Mark Hayden is a resident of Alameda County, California. Plaintiff purchased the Bob's Red Mill Organic Whole Ground Flaxseed Meal during the class period. Plaintiff relied on Defendant's deceptive labeling claims as set forth below.

## FACTUAL ALLEGATIONS

### THE LABELS OF THE PRODUCTS LEAD REASONABLE CONSUMERS TO BELIEVE THAT THE PRODUCTS ARE HEALTHY AND MADE WITH NON-TOXIC INGREDIENTS

11.     Defendant is the manufacturer of various whole-grain food products. Bob's Red Mill was established in 1978 by Bob and Charlee Moore[3] and bills itself as the "nation's leading miller of diverse whole-grain foods."[4]

12.     Defendant manufactures two flaxseed products called Bob's Red Mill Whole Ground Flaxseed Meal and Bob's Red Mill Golden Flaxseed Meal.[5] Defendant manufactures both organic versions and non-organic versions of the Products. The labels for each of these products give reasonable consumers the impression that the Products are healthy and made with quality ingredients and do not contain unlawful levels of heavy metals. For example, the front labels on each of the Products state: "To Your Good Health," "You Can See Our Quality," "Non-GMO," and "Gluten Free." The net-effect or net-impression of the Products' labeling on

---

[3] *Bob and Charlee Moore - The Heart of Bob's Red Mill, available at* https://www.bobsredmill.com/bobs-way/meet-bob-and-charlee-moore (last visited July 28, 2023).

[4] Shelly Strom, *Taking Red Mill global,* PORTLAND BUSINESS JOURNAL, *available at* https://www.bizjournals.com/portland/stories/2005/02/21/story4.html (last visited July 28, 2023).

[5] Defendant manufactures organic versions and non-organic versions of both Products.

consumers is that the Products do not contain any potentially harmful ingredients like high levels of cadmium.

13.     The front labels for each of the organic versions of the Products are shown below.

Bob's Red Mill Organic Whole Ground Flaxseed Meal (front label)



CROSNER LEGAL, P.C.

1

2                <u>Bob's Red Mill Organic Golden Flaxseed Meal (front label)</u>

3

4

5

6

7

8

9

10

11

CROSNER LEGAL, P.C.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



CLASS ACTION COMPLAINT

14.     The front labels for each of the non-organic versions of the products are shown below.

Bob's Red Mill Whole Ground Flaxseed Meal (front label)



CLASS ACTION COMPLAINT

Bob's Red Mill Golden Flaxseed Meal (front label)

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

15.     The back labels of the Products further re-enforces the impression that the Products are healthy, made with high quality ingredients, and do not contain unlawful levels of cadmium. For example, the back labels state the following (with emphasis added):

Milling flaxseeds is like opening a treasure chest. **Flaxseeds contain a wealth of nutrients**, but as whole seeds most of these nutritional treasures are locked away. Milling the seeds into meal **gives your body access to the amazing nourishment** stored within. In order to maintain the integrity of the wholesome nutrients in the flaxseed oil, the seeds must be milled with great care. That is why **we don't make compromises or cut corners**. Our proprietary flax milling machine keeps the meal cool, which preserves the freshness of those precious oils. Its not the fastest way, but it's the right way, and its absolutely worth the time and effort. **The result is a flaxseed meal with optimal nutrition** and a fresh nutty flavor you won't find anywhere else.

**There is a general agreement among experts of all sorts that folks should consume more omega-3 fatty acids to promote good health**. Two tablespoons of Bob's Red Mill Flaxseed Meal contains 2430 mg of ALA per serving, which is 187% of the Daily Value for ALA (1.3g). What's more, each serving provides 3 grams of fiber. **It's no wonder so many nutritionists urge you to add flaxseed to your daily diet**. I added a tablespoon to my oatmeal every morning, and I truly believe there is no better way to start the day.

**To your good health**,

Bob Moore

16.     The back labels of both Products (including the organic and non-organic versions) are substantially similar. An example of the back label of one of the Products is shown below.

1

2

Example Back Label

3

4

5

6

7

8

9

10

11

12

13

14

15



16

17

18

19

20

21

22

23

24

25

26

27

28

9

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

**TESTING REVEALS THAT THE PRODUCTS CONTAIN HIGH LEVELS OF CADMIUM**

17.      On January 12, 2023, the website ConsumerLabs.com published results of testing performed on various flaxseed products.[6] Those test results revealed that the Bob's Red Mill Whole Ground Flaxseed Meal tested positive for 6.1 micrograms of cadmium and that the Bob's Red Mill Whole Golden Flaxseed Meal product tested positive for 5.5 micrograms of cadmium.

18.      ConsumerLab deemed the Bob's Red Mill Whole Ground Flaxseed Meal and the Bob's Red Mill Whole Golden Flaxseed Meal products "not approved" because both Products exceeded 4.1 micrograms of cadmium per suggested serving.

19.      ConsumerLab utilized 4.1 micrograms of cadmium per suggested serving as the benchmark for whether a product would be approved. This number was chosen because California law provides that 4.1 micrograms per day of cadmium is the maximum allowable daily value of cadmium exposure by oral route pursuant to California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"), Cal. Health & Safety Code § 25249.5, *et seq.*[7] In other words, a food product that exceeds the 4.1 micrograms maximum allowable daily value of cadmium must be labeled as a known carcinogen in accordance with Proposition 65. Despite testing much higher than 4.1 micrograms of cadmium, the Products are not labeled as known carcinogens in accordance with Proposition 65.

20.      The Bob's Red Mill Products also had much higher levels of cadmium than competing flaxseed products, including flaxseed products sold by Barlean's, Terrasoul Superfoods, and Arrowhead Mills.

21.      Below are screenshots of the ConsumerLab test results.

---

[6]  Tod Cooperman, *Whole, Ground, Milled, and Cracker Flaxseed Review,* CONSUMERLABS.COM, *available at* https://www.consumerlab.com/reviews/flaxseed-whole-ground-and-milled/flaxseed-food/?search=Bob%27s%20Red%20Mill#whatclfound (last visited July 28, 2023).

[7] *See* https://oehha.ca.gov/proposition-65/chemicals/cadmium (last visited July 28, 2023).

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Test Results by Product: ⌄

| Approval Status ⓘ<br>Product Name | Heavy Metals ⓘ<br>Microbial Contamination ⓘ<br>*Appearance/ Taste* | Dietary Fiber ⓘ<br>Total Carbohydrates ⓘ<br>Protein ⓘ<br>Calories ⓘ | Total Fat ⓘ<br>Claimed Fatty Acids ⓘ<br>Suggested Storage | ❯ |
|---|---|---|---|---|
| **$ Price Check** | *Brown-white, coarsely ground and slightly dry and chewy meal. Slight nutty flavor.* | | | |
| **NOT APPROVED**<br>**due to cadmium contamination**<br>**Bob's Red Mill® Whole Ground Flaxseed Meal**<br>➕<br>**Dist. by Bob's Red Mill Natural Foods, Inc.** | 2 tbsp [13 g]<br><br>Whole flaxseed meal<br><br>**Cadmium:** 6.1 mcg (0.47 mcg/g)<br>**Lead:** <0.13 mcg (<0.01 mcg/g)<br>**Arsenic:** 0.57 mcg (0.04 mcg/g)<br><br>**Microbes:** Pass<br><br>*Brown-white fine to medium ground, chewy meal, slightly bitter.* | 2 tbsp [13 g]<br><br>Fiber: 3 g ✔<br>(Found: 2.7 g)<br><br>Total Carbs: 4 g ✔<br>(Found: 3.4 g)<br><br>Protein: 3 g ✔<br>(Found: 2.8 g)<br><br>70 Cal ✔<br>(Found: 75.7 Cal) | 2 tbsp [13 g]<br><br>Fat: 4.5 g ✔<br>(Found: 5.6 g)<br><br>Claimed Fatty Acids:<br>Omega-3: 2,430 mg<br><br>Keeps best refrigerated or frozen after opening. | |

## Test Results by Product: ⌄

| Approval Status ⓘ<br>Product Name | Heavy Metals ⓘ<br>Microbial Contamination ⓘ<br>*Appearance/ Taste* | Dietary Fiber ⓘ<br>Total Carbohydrates ⓘ<br>Protein ⓘ<br>Calories ⓘ | Total Fat ⓘ<br>Claimed Fatty Acids ⓘ<br>Suggested Storage | ❯ |
|---|---|---|---|---|
| **Added March 2023** ⓘ<br>**$ Price Check** | *and oily.* | | | |
| **NOT APPROVED**<br>**due to cadmium contamination**<br>**Bob's Red Mill® Whole Golden Flaxseed**<br>➕<br>**Dist. by Bob's Red Mill Natural Foods, Inc.** | 3 tbsp [31 g]<br><br>Organic whole golden flaxseed<br><br>**Cadmium:** 5.5 mcg (0.18 mcg/g)<br>**Lead:** <0.31 mcg (<0.01 mcg/g)<br>**Arsenic:** 0.96 mcg (0.03 mcg/g)<br><br>**Microbes:** Pass<br><br>*Light brown, crunchy seeds with nutty but slightly stale oil flavor.* | 3 tbsp [31 g]<br><br>Fiber: 8 g ✔<br>(Found: 8.7 g ⓘ)<br><br>Total Carbs: 10 g ✔<br>(Found: 7.2 g ⓘ)<br><br>Protein: 6 g ✔<br>(Found: 7.1 g)<br><br>170 Cal ✔<br>(Found: 176.4 Cal) | 3 tbsp [31 g]<br><br>Fat: 11 g ✔<br>(Found: 13.2 g)<br><br>Claimed Fatty Acids:<br>Omega-3: 5,790 mg<br><br>Keeps best refrigerated or frozen after opening. | |

CLASS ACTION COMPLAINT

22.    In response to the ConsumerLab test results, a representative of Defendant seemingly admitted that Defendant does not test the Products for carcinogens and toxic heavy metals like cadmium. The representative stated: "Bob's Red Mill Products comply with all applicable laws and regulations, those laws and regulations do not require us to conduct our own testing for heavy metals." The full response is set forth below.

**Bob's Red Mill (1/20/23):**

A CL member contacted Bob's Red Mill Natural Foods on 1/17/23 asking if corrective action was being taken in response to ConsumerLab's findings of relatively high levels of cadmium in servings of both of its products tested in this Review. A Senior Company Representative responded the next day, noting the following — which suggests that **Bob's Red Mill may not be checking its flaxseed for heavy metals such as cadmium:**

"Flaxseeds may absorb cadmium from the soil or growing environment, but that does not mean consuming Flaxseeds and/or Flaxseed Meal is unsafe."

"The Food and Drug Administration, the U.S. agency with responsibility for food safety, has studied cadmium for many years and has set limits on how much lead/cadmium/mercury/arsenic can be present in food. Our products comply with FDA guidelines."

"Regarding possible exposure to heavy metals, it is up to you to decide whether you feel a product is safe to consume and you may choose to discuss further with a health care professional. **Bob's Red Mill products comply with all applicable laws and regulations, those laws and regulations do not require us to conduct our own testing for heavy metals.**"

"We stand behind our products with a 100% customer satisfaction guarantee, so I would be happy to send you free product vouchers and coupons, Amazon gift card for the purchase price of the product or a check refund for the purchase price, whichever you prefer."

"We are currently evaluating the findings of this report and have engaged with our raw material suppliers to address the issues raised in the report."

Regarding the statement made by the representative that "Bob's Red Mill products comply with all applicable laws and regulations..." it should be noted that ConsumerLab recently learned that a Notice of Violation was filed in California in April 2022 against Bob's Red Mill Natural Foods alleging that its *Whole Golden Flaxseed* contained an amount of cadmium that exceeded the California Proposition 65 level of 4.1 mcg of cadmium per daily serving while the product, when sold into California, did not include the required warning label. The amount found is not disclosed in the public posting of the case, but, in this Review, ConsumerLab.com found 5.5 mcg in the listed 3 tablespoon serving.

Regarding the statement that the FDA has "set limits" on how much cadmium can be present in food and that Bob's Red Mill products comply with FDA guidelines, ConsumerLab is not aware of any such federal limit for cadmium in flaxseed.

ConsumerLab has not been contacted by Bob's Red Mill Natural Foods, but, per our policy, we would furnish the company with our findings, at no cost, if requested.

CROSNER LEGAL, P.C.

**EXPOSURE TO HIGH LEVELS OF CADMIUM IS HARMFUL TO HUMAN HEALTH**

23.     According to the Centers for Disease Control and Prevention ("CDC"), consuming "large amounts of cadmium can severely irritate the stomach and cause vomiting and diarrhea."[8] Cadmium is also considered a cancer-causing agent.[9] Indeed, the Environmental Protection Agency ("EPA") classifies cadmium as a "probable human carcinogen."[10]

24.     Because cadmium is a cancer-causing agent, California has placed cadmium on the Proposition 65 list. According to the Proposition 65 website, "[e]xposure to cadmium and cadmium compounds can cause cancer of the lung and may cause cancer of the prostate and kidney."[11] "Cadmium is also on the Proposition 65 list because it can cause birth defects or other reproductive harm. Exposure to cadmium may harm a man's reproductive system. Exposure during pregnancy may affect a child's development."[12]

25.     The California Office of Environmental Health Hazard Assessment ("OEHHA") has released a comprehensive technical support document on cadmium titled *Public Health Goal for Cadmium in Drinking Water*.[13] This technical document cites to several animal and human studies finding the consumption of cadmium leads to developmental and reproductive toxicity.

26.     The OEHHA technical document on cadmium also cites to several published scientific studies showing that consumption of cadmium may cause immunotoxicity,

---

[8] *Cadmium Factsheet,* CENTERS FOR DISEASE CONTROL AND PREVENTION, *available at* https://www.cdc.gov/biomonitoring/Cadmium_FactSheet.html#:~:text=Breathing%20high%20levels%20of%20cadmium,considered%20a%20cancer%2Dcausing%20agent. (last visited July 31, 2023).

[9] *Id.*

[10] *Cadmium Compounds (A) Hazard Summary,* ENVIRONMENTAL PROTECTION AGENCY, *available at* https://www.epa.gov/sites/default/files/2016-09/documents/cadmium-compounds.pdf (last visited July 31, 2023).

[11] *Cadmium and Cadmium Compounds,* PROPOSITION 65- YOUR RIGHT TO KNOW!, *available at* https://www.p65warnings.ca.gov/fact-sheets/cadmium-and-cadmium-compounds (last visited July 31, 2023).

[12] *Id.*

[13] *Public Health Goal for CADMIUM in Drinking Water,* OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT, *available at* https://oehha.ca.gov/media/downloads/water/chemicals/122206cadmiumphg.pdf (last visited July 31, 2023).

13

neurotoxicity, renal toxicity, and carcinogenicity.[14] The technical document goes on to say that "[a]dverse effects associated with human exposures to cadmium are well known and have been characterized in both occupational and residential settings."[15]

27.    Research has also linked cadmium exposure with kidney dysfunction and decreases in bone mineral density.[16] Indeed, cadmium "is a toxic heavy metal" that is a "severe health threat" to humans.[17] Cadmium "largely accumulates in kidneys, liver, bone and other organs and causes irreversible damage to the target organs."[18]

### PLAINTIFF'S EXPERIENCE

28.    Plaintiff Mark Hayden purchased 32-ounce bags of the Bob's Red Mill Organic Whole Ground Flaxseed Meal product on approximately two occasions beginning on or around January of 2023. Plaintiff purchased the Product from the Berkeley Bowl store located at 2020 Oregon Street, Berkeley, California 94703 and paid approximately $10 for each of his purchases. Plaintiff Hayden was not aware of the high levels of cadmium in the Product. After reading the label, Plaintiff Hayden purchased the Product on the assumption that the labeling was accurate, and that the Product did not contain harmful substances like cadmium. Plaintiff saw and relied on the following front-labeling statements "To Your Good Health," "You Can See Our Quality," "Non-GMO," "Organic," and "Gluten Free." Plaintiff also saw and relied on the rear-labeling statements, including the statements that the Products "contain a wealth of nutrients," that the Products "gives your body access to the amazing nourishment," that there "is a general agreement among experts of all sorts that folks should consume more omega-3 fatty acids to

---

[14] *Id.*

[15] *Id.*

[16] Soisungwan Satarug, et al., *Adverse Health Effects of Chronic Exposure to Low-Level Cadmium in Foodstuffs and Cigarette Smoke,* ENVIRONMENTAL MEDICINE VOL. 112, No. 10, *available at* https://ehp.niehs.nih.gov/doi/full/10.1289/ehp.6751 (last visited July 31, 2023).

[17] Mei Wang, et al., *A review on Cadmium Exposure in the Population and Intervention Strategies Against Cadmium Toxicity,* BULLETIN OF ENVIRONMENTAL CONTAMINATION AND TOXICOLOGY (Jan. 23, 2021), *available at* https://link.springer.com/article/10.1007/s00128-020-03088-1 (last visited July 31, 2023).

[18] *Id.*

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

promote good health," and the statement "To Your Good Health." The front and rear label statements created the net impression that the Products are healthy and do not contain potentially harmful ingredients like high levels of cadmium. Plaintiff would not have purchased the Product had he known the Product contains high levels of cadmium, a substance which is known to be hazardous to human health. As a result, Plaintiff suffered in fact when he spent money to purchase the Product he would not have purchased absent Defendant's misconduct. Plaintiff is not bringing a personal injury claim.

29.     Plaintiff has not purchased the Products after learning that they contain high levels of cadmium. Plaintiff continues to see the Products for sale at retail stores in California and desires to purchase the Products again if the Products did not contain high levels of cadmium. However, as a result of Defendant's ongoing misrepresentations and material omissions, Plaintiff is unable to rely on the Products' labeling when deciding in the future whether to purchase the Products.

30.     Plaintiff did not notice any disclaimer, qualifier, or other explanatory statement or information on the Products' labeling or packaging that disclosed that the Products contained high levels of cadmium. At the time of Plaintiff's purchases, he did not know the Products contained high levels of cadmium.

**REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S MISREPRESENTATIONS AND OMISSIONS**

31.     Consumers, like Plaintiff, relied on Defendant's labeling statements set forth above, including the statements: "To Your Good Health," "You Can See Our Quality," "Non-GMO," "Organic," "Gluten Free," "contain a wealth of nutrients," that the Products "gives your body access to the amazing nourishment," and that there "is a general agreement among experts of all sorts that folks should consume more omega-3 fatty acids to promote good health." The net-effect or net-impression of the Products' labeling on consumers is that the Products do not contain harmful ingredients like high levels of cadmium and certainly do not contain unlawful levels of harmful ingredients.

CROSNER LEGAL, P.C.

32.     Consumers, like Plaintiff, want to know if a product they eat contains substances which are hazardous to their health. Consumers, like Plaintiff, want to know if a product they eat contains high levels of substances which are declared to be unlawful carcinogens by the State of California. Defendant's nondisclosure of the high levels of cadmium in the Products is material because reasonable consumers would deem the presence of cadmium in the Products to be important in determining whether to purchase the Products. Defendant has exclusive knowledge that the Products contain high levels of cadmium. The fact that Defendant's Products contain cadmium is not reasonably accessible to Plaintiff and consumers. Consumers, like Plaintiff, trust that the food products they purchase do not contain toxic heavy metals like cadmium which have been intentionally or negligently added to the products. Consumers, like Plaintiff, trust that the food products they purchase do not contain toxic heavy metals at unlawful levels. Defendant has a duty to disclose the presence of cadmium in the Products because the fact is known to Defendant (that the Products contain cadmium), and the failure to disclose the cadmium in the Products is misleading. The high levels of dangerous substances such as cadmium in the Products implicates a health concern that is important to reasonable consumers when deciding to purchase Defendant's Products. Defendant has actively concealed the high levels of cadmium in the Products from Plaintiff and putative class members. For example, in the letter to Consumer Labs, Defendant stated the product was legal to sell. However, it is not legally sold in California without the required Proposition 65 warning.

33.     A failure to disclose a fact constitutes actionable conduct if the omission goes to the central function of the product. Here, the Products' central function is for people to safely consume the Products. Flaxseed that contains harmful cadmium in extremely high levels does not serve its central function. Reasonable consumers, like Plaintiff, would deem it important in determining whether to purchase the Products because Plaintiff would not have purchased the Products had he known that harmful chemicals like cadmium were in the Products. That is, the omission of the cadmium content of the Products was material because a reasonable consumer would deem it important in determining how to act in the transaction at issue.

34.     A failure to disclose a fact constitutes actionable conduct if the omission causes an unreasonable safety hazard. Here, it is not reasonable to sell a product that consumers eat with illegally high levels of cadmium. As explained above, cadmium is a safety hazard because it causes several negative health effects in humans including developmental and reproductive problems and an increased risk of certain cancers.

35.     Defendant also made partial representations that the Products are safe and healthy, including "To Your Good Health," "You Can See Our Quality," "Non-GMO," "Organic," "Gluten Free," which create the net-impression that the Products did not contain potentially harmful ingredients like cadmium. These partial disclosures are misleading because the cadmium content of the Products was not disclosed.

**PLAINTIFF AND THE PUTATIVE CLASS MEMBERS SUFFERED ECONOMIC INJURY**

36.     Plaintiff and putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent. With all the other flaxseed products on the market without high levels of cadmium, a reasonable consumer would choose to purchase a product without high levels of cadmium and not Defendant's Products. Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Products that were defective, not merchantable, and not fit for their represented purpose. Consumers, including Plaintiff, would not have purchased Defendant's Products if they had known the Products contain high levels of cadmium, a substance which has known adverse health effects on humans. Defendant did not disclose that the Products contain high levels of cadmium although it was required to do so in accordance with California's Proposition 65.

37.     Making matters worse, flaxseed products made by Defendant's competitors, such as Barlea's, Terrasoul Superfoods, Arrowhead Mills, and many other popular brands, do not contain high levels of cadmium. Thus, there are safer alternatives that Plaintiff and class members would have purchased but were denied the benefit-of-the bargain as a result of Defendant's concealment of the high levels of cadmium in the Products. Because high levels of cadmium is a hazard to human health, Defendant has a continuing duty to disclose the presence

of high levels of cadmium in the Products to consumers. Defendant has failed to adequately disclose that the Products contain high levels of cadmium. Defendant's Products contain a hidden defect and Plaintiff and putative class members suffered economic injury. Had Plaintiff and putative class members known about the high levels of cadmium, they would not have purchased the Products or would have paid less for the Products.

38.     Accordingly, Plaintiff brings this action individually and on behalf of other similarly situated consumers to halt the dissemination of Defendant's deceptive advertising message, correct the deceptive perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products. As a consequence of Defendant's deceptive labeling and material omissions, Plaintiff alleges Defendant has violated and is violating California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. (the "UCL") and constitutes a breach of implied warranties.

### NO ADEQUATE REMEDY AT LAW

39.     Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

40.     The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the Product labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). This is especially important here because Plaintiff alleges Defendant has committed "unlawful" acts and brings a claim for violation of the UCL's "unlawful prong." Specifically, Defendant has violated California's Safe Drinking Water and Toxic Enforcement Act of 1986, Cal. Health & Safety Code § 25249.5, *et seq.* No

CROSNER LEGAL, P.C.

18

1    other causes of actions allow this claim to proceed, and thus, there is no adequate remedy at law

2    for this specific violation of the UCL's unlawful prong. Plaintiff's UCL unlawful prong claim

3    does not rest on the same conduct as his other causes of action, and there is no adequate remedy

4    at law for this specific unlawful claim. Plaintiff and class members may also be entitled to

5    restitution under the UCL, while not entitled to damages under other causes of action asserted

6    herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or

7    acquires, by purchase or lease, any goods or services for personal, family, or household

8    purposes) and other statutorily enumerated conduct).

9         41.    Injunctive relief is appropriate on behalf of Plaintiff and members of the class

10   because Defendant continues to omit material facts about the Products. Injunctive relief is

11   necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or

12   unlawful conduct described herein and to prevent future harm—none of which can be achieved

13   through available legal remedies (such as monetary damages to compensate past harm).

14   Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold

15   products is necessary to dispel the public misperception about the Products that has resulted

16   from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures

17   would include, but are not limited to, publicly disseminated statements that the Products contain

18   high levels of cadmium; and/or requiring prominent qualifications and/or disclaimers on the

19   Products' front label concerning the Products' true nature. An injunction requiring affirmative

20   disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat

21   purchases, is also not available through a legal remedy (such as monetary damages). In addition,

22   Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future

23   harm, because discovery and Plaintiff's investigation have not yet completed, rendering

24   injunctive relief necessary. Further, because a public injunction is available under the UCL, and

25   damages will not adequately benefit the general public in a manner equivalent to an injunction.

26        42.    It is premature to determine whether an adequate remedy at law exists. This is an

27   initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has

28   been certified yet. No expert discovery has commenced and/or completed. The completion of

CROSNER LEGAL, P.C.

fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves his right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

**CLASS ACTION ALLEGATIONS**

43.      Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

> All persons who purchased the Products for personal use in California within the applicable statute of limitations until the date class notice is disseminated.

44.      Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

45.      Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

46.      The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

47.      Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

48.      Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common

CROSNER LEGAL, P.C.

1  to the Class Members which predominate over any questions which may affect individual Class

2  Members include, but are not limited to:

3        a.     Whether Defendant is responsible for the conduct alleged herein which was

4  uniformly directed at all consumers who purchased the Products;

5        b.     Whether Defendant's misconduct set forth in this Complaint demonstrates that

6  Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the

7  advertising, marketing, and sale of the Products;

8        c.     Whether Defendant made material omissions concerning the Products that were

9  likely to deceive the public;

10        d.     Whether Plaintiff and the Class are entitled to injunctive relief;

11        e.     Whether Plaintiff and the Class are entitled to money damages and/or restitution

12  under the same causes of action as the other Class Members.

13        49.    Typicality: Plaintiff is a member of the Class that Plaintiff seeks to represent.

14  Plaintiff's claims are typical of the claims of each Class Member in that every member of the

15  Class was susceptible to the same deceptive, misleading conduct and purchased the Products.

16  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

17        50.    Adequacy: Plaintiff is an adequate Class representative because Plaintiff's

18  interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the

19  consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong

20  interest in vindicating the rights of the class; Plaintiff has retained counsel competent and

21  experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this

22  action. Plaintiff has no interests which conflict with those of the Class. The Class Members'

23  interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel.

24  Defendant has acted in a manner generally applicable to the Class, making relief appropriate

25  with respect to Plaintiff and the Class Members. The prosecution of separate actions by

26  individual Class Members would create a risk of inconsistent and varying adjudications.

27

28

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

51.     The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.      The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.      The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.      When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.      This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.      Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.      This class action will assure uniformity of decisions among Class Members;

g.      The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.      Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

52.     Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

53.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and Class members.

54.     Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

**FIRST CLAIM FOR RELIEF**

**Violation of California's Consumers Legal Remedies Act**

**Cal. Civ. Code § 1750 *et seq.***

55.     Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

56.     Plaintiff brings this claim under the CLRA individually and on behalf of the Class against Defendant.

57.     At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

58.     At all relevant times, Defendant constituted a "person," as defined in California Civil Code section 1761(c).

59.     At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

60.     The purchases of the Products by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

61.     Defendant disseminated, or caused to be disseminated, through their advertising, false and misleading representations, including the Products' labeling that they do not contain hazardous substances such as high levels of cadmium. Defendant fails to disclose that the Products contain high levels of cadmium. This is a material omission as reasonable consumer would find the fact that the Products contain high levels of cadmium to be important to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

a)     Defendant represented that the Product have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

CROSNER LEGAL, P.C.

b)      Defendant represented that the Product are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c)      Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d)      Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

62.     Defendant violated the CLRA because the Products contain high levels of cadmium. Defendant knew or should have known that consumers would want to know that the Products contain high levels of cadmium. Defendant had a duty to disclose that the Products contain high levels of cadmium. Based on the statutory text, legislative history (which includes the National Consumer Act), the judicial decisions and statutes that existed when the CLRA was enacted, the subsequent case law, and the many amendments to the CLRA from 1975 through 2016, failures to disclose material facts are actionable under the CLRA. In particular, subdivision (a)(5), (7), and (9) of Civil Code section 1770 proscribe material omissions. Defendant's labeling of the Products also created the net-impression that the Products do not contain hazardous substances such as cadmium. Defendant had exclusive knowledge of the material fact that the Products contain high levels of cadmium, and Defendant failed to disclose this fact. Defendant actively concealed this material fact. The fact that the Products contain high levels of cadmium is material to consumers because reasonable consumers would deem the existence of cadmium in a product they eat important in determining whether to buy the Products.

63.     Defendant's actions as described herein were done with conscious disregard of Plaintiff and the Class members' rights and were wanton and malicious.

64.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

65.    Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

66.    Pursuant to California Civil Code section 1782, Plaintiff notified Defendant in writing by certified mail of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA, Plaintiff will amend this complaint to seek actual, punitive, and statutory damages, as appropriate.

67.    Pursuant to section 1780(d) of the CLRA, attached as **Exhibit 1** is an affidavit showing that this action was commenced in a proper forum.

<u>**SECOND CLAIM FOR RELIEF**</u>

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200 *et seq.***

68.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

69.    Plaintiff brings this claim under the UCL individually and on behalf of the Class against Defendant.

70.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

71.    Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and violating California Civil Code sections 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16), California Business & Professions Code section 17500 *et seq.*, California common law breach of implied warranties, and California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"), Cal. Health & Safety Code § 25249.5*, et seq.* Plaintiff, individually and on

CROSNER LEGAL, P.C.

25

1   behalf of the other Class members, reserves the right to allege other violations of law, which

2   constitute other unlawful business acts or practices. Such conduct is ongoing and continues to

3   this date.

4         72.    Defendant committed "unfair" business acts or practices by: (1) engaging in

5   conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members

6   of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or

7   substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct

8   that undermines or violates the intent of the consumer protection laws alleged herein. There is

9   no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a

10  Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material

11  fact (that the Products contain high levels of cadmium) of which it had exclusive knowledge.

12  While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by

13  its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair,"

14  as it offended an established public policy. There were reasonably available alternatives to

15  further Defendant's legitimate business interests, other than the conduct described herein. For

16  example, several of Defendant's competitors sell flaxseed products that do not contain high

17  levels of cadmium.

18        73.    Defendant committed "fraudulent" business acts or practices by making the

19  representations of material fact regarding the Products set forth herein. Defendant's business

20  practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers

21  into believing the Products do not contain high levels of cadmium.

22        74.    Plaintiff and the other members of the Class have in fact been deceived as a result

23  of their reliance on Defendant's material representations and omissions. This reliance has caused

24  harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's

25  Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a

26  result of purchasing the Product and Defendant's unlawful, unfair, and fraudulent practices.

27        75.    Defendant's wrongful business practices and violations of the UCL are ongoing.

28

CROSNER LEGAL, P.C.

76.     Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

77.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seek (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

**THIRD CLAIM FOR RELIEF**

**Breach of Implied Warranties**

78.     Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

79.     Plaintiff brings this claim individually and on behalf of the Class against Defendant.

80.     Defendant was at all relevant times the manufacturer, distributor, and/or warrantor of the Products. Defendant knew or had reason to know of the specific use for which its Products were purchased.

81.     Defendant, through the acts and omissions set forth herein, in the sale, marketing, and promotion of the Products made implied representations to Plaintiff and the Class that the Products were fit for the particular purpose of consumption. However, the Products are hazardous to consume. Further, Defendant cannot legally sell the product in California without a Proposition 65 disclosure on the labels, and thus, by definition they are not fit for the particular purpose of consumption. At the time the Products were sold, Defendant knew or should have known that Plaintiff and members of the Class would rely on Defendant's skill and judgment

CROSNER LEGAL, P.C.

regarding the safety and composition of the Products. Because the Products contain high levels of cadmium, they are not of the same quality as those generally accepted in the trade and were not fit for the ordinary purposes for which the Products are used (i.e., consumption).

82.     By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Product's packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant's labeling and advertising, combined with the implied warranty of merchantability, constitute a warranty that the Products do not contain hazardous substances such as high levels of cadmium.

83.     In reliance on Defendant's skill and judgment and the implied warranties of fitness for this purpose and merchantability, Plaintiff and members of the Class purchased the Product for use to consume. Defendant knew that the Products would be purchased and used without further testing by Plaintiff and Class members.

84.     Consumers are the intended beneficiaries of the implied warranty as they are the ones Defendant made the Products for and specifically marketed the Products to consumers. Defendant breached the implied warranty of merchantability. Because the Product contain high levels of cadmium, they are not fit for ordinary use (i.e., consumption).

85.     As a direct and proximate result of Defendant's breach of warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Product, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for the loss of that money, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

CROSNER LEGAL, P.C.

86.     Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive. Reasonable consumers would look down upon it and/or otherwise would despise such misconduct. This misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, requests for relief pursuant to each claim set forth in this complaint, as follows:

a.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b.      Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.      Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d.      Ordering damages for Plaintiff and the Class;

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

1        e.        Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the

2 other members of the Class;

3        f.        Ordering Defendant to pay both pre- and post-judgment interest on any amounts

4 awarded; and

5        g.        Ordering such other and further relief as may be just and proper.

6 **JURY DEMAND**

7      Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

8

9

10 Dated: August 1, 2023             CROSNER LEGAL, P.C.

11

12                       By:      */s/  Michael T. Houchin*
                               MICHAEL T. HOUCHIN

13

14                  9440 Santa Monica Blvd. Suite 301
                 Beverly Hills, CA 90210
                 Tel: (866) 276-7637

15                  Fax: (310) 510-6429
                 mhouchin@crosnerlegal.com

16

                 *Attorneys for Plaintiff and the Proposed Class*

17

18

19

20

21

22

23

24

25

26

27

28

30
CLASS ACTION COMPLAINT

# EXHIBIT 1

1         I, MICHAEL T. HOUCHIN, declare as follows:

2         1.     I am an attorney duly licensed to practice before all of the courts of the State of

3    California. I am one of the counsel of record for Plaintiff.

4         2.     This declaration is made pursuant to § 1780(d) of the California Consumers Legal

5    Remedies Act.

6         3.     Defendant Bob Red Mill Natural Foods, Inc. has done, and is doing, business in

7    California, including in this District. Such business includes the marketing, promotion,

8    distribution, and sale of the Bob's Red Mill Whole Ground Flaxseed Meal and Bob's Red Mill

9    Golden Flaxseed Meal products.

10        4.     Plaintiff Hayden purchased one of the products at issue in this District.

11        I declare under penalty of perjury under the laws of the State of California that the

12   foregoing is true and correct. Executed August 1, 2023 at San Diego, California.

13

14                              CROSNER LEGAL, P.C.

15

16                              By:     /s/ Michael T. Houchin
                               MICHAEL T. HOUCHIN

17                              9440 Santa Monica Blvd. Suite 301

18                              Beverly Hills, CA 90210
                           Tel: (866) 276-7637

19                              Fax: (310) 510-6429
                           mhouchin@crosnerlegal.com

20

21

22

23

24

25

26

27

28