1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK HAYDEN,

            Plaintiff,

     v.

BOB'S RED MILL NATURAL FOODS, INC.,

            Defendant.

Case No. 23-cv-03862-HSG

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND REQUESTS FOR JUDICIAL NOTICE**

Re: Dkt. Nos. 17, 18

Pending before the Court is Defendant Bob's Red Mill Natural Foods, Inc.'s motion to dismiss and its request for judicial notice.  Dkt. Nos. 17, 18.  The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons discussed below, the Court **GRANTS IN PART and DENIES IN PART** the motion and the associated request for judicial notice.

I.    **BACKGROUND**

On August 1, 2023, Plaintiff Mark Hayden ("Plaintiff") filed a putative class action complaint against Bob's Red Mill Natural Foods, Inc. ("Defendant") concerning its allegedly deceptive marketing of its Whole Ground Flaxseed Meal and Golden Flaxseed Meal, in both non-organic and organic varieties ("the Products").  Dkt. No. 1 ("Compl.") ¶ 12.  Specifically, Plaintiff alleges that the Products' front label contains representations such as "To Your Good Health," "You Can See Our Quality," "Non-GMO," and "Gluten Free."  The back label allegedly also states (among other things) that the Products "contain a wealth of nutrients" and "give[] your body access to the amazing nourishment," and note that there "is a general agreement among experts of all sorts that folks should consume more omega-3 fatty acids to promote good health" (collectively, the "Representations").  Compl. ¶¶ 28.  Taken together, Plaintiff alleges that the

1   Representations give the "net-effect or net-impression . . . that the Products do not contain any

2   potentially harmful ingredients like high levels of cadmium," and that this impression is

3   misleading because the Products *do* contain high levels of cadmium. *Id.* ¶ 12. According to

4   testing performed by ConsumerLabs.com, for example, the (non-organic) Whole Ground Flaxseed

5   Meal tested positive for 6.1 micrograms of cadmium per serving and the (organic) Whole Golden

6   Flaxseed Meal product tested positive for 5.5 micrograms of cadmium per serving. Compl. ¶¶ 17,

7   21. Plaintiff further alleges that the cadmium found in the Products – a "known human carcinogen

8   linked to a myriad of health issues" – is "unsafe and unlawful" and should be disclosed. *Id.* ¶ 2.

9          In light of Defendant's allegedly deceptive labeling, Plaintiff brings three causes of action

10  for violations of California's Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750

11  et seq.) and Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 et seq.), and for

12  breach of implied warranties. *Id.* ¶¶ 55–86. On September 28, 2024, Defendant moved to dismiss

13  Plaintiff's complaint in its entirety, arguing that Plaintiff lacks standing and has failed to plead any

14  plausible claim for relief. Dkt. No. 17 ("Mot."). Defendant also filed a request for judicial notice.

15  Dkt. No. 18 ("RJN"). The matter is now fully briefed and ready for disposition. *See* Dkt. No. 20

16  ("Opp."), 25 ("Reply").

17  **II.     LEGAL STANDARD**

18          **A.     Rule 12(b)(1)**

19          Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to move to dismiss for lack of

20  subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The issue of Article III standing is

21  jurisdictional and is therefore "properly raised in a motion to dismiss under Federal Rule of Civil

22  Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). To meet his burden of

23  establishing standing, a plaintiff must show he has "(1) suffered an injury in fact, (2) that is fairly

24  traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

25  favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May

26  24, 2016). And where a plaintiff seeks injunctive relief, he must also demonstrate a "real and

27  immediate threat of repeated injury." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946

28  (9th Cir. 2011).

2

United States District Court
Northern District of California

1   If a plaintiff fails to establish standing or any other aspect of subject matter jurisdiction,

2   "the court, on having the defect called to its attention or on discovering the same, must dismiss the

3   case, unless the defect be corrected by amendment." *Tosco Corp. v. Communities for a Better*

4   *Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *abrogated on other grounds by Hertz Corp. v. Friend*,

5   559 U.S. 77 (2010).

6   **B.    Rule 12(b)(6)**

7   Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

8   statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A

9   defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

10  granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the

11  complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

12  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule

13  12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible

14  on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

15  when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

16  the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

17  In reviewing the plausibility of a complaint, courts "accept factual allegations in the

18  complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

19  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless,

20  courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

21  fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

22  2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

23  Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a

24  claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity

25  the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317

26  F.3d 1097, 1107 (9th Cir. 2003).  A plaintiff must identify "the who, what, when, where, and how"

27  of the alleged conduct, so as to provide defendants with sufficient information to defend against

28  the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  However, "[m]alice, intent,

3

1    knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P.

2    Rule 9(b).

3         Even if the court concludes that a 12(b)(6) motion should be granted, the "court should

4    grant leave to amend even if no request to amend the pleading was made, unless it determines that

5    the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203

6    F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

7    **III.    DISCUSSION**

8         **A.    Request for Judicial Notice**

9         Before turning to the substance of Defendant's motion, the Court considers its requests for

10   judicial notice, which are unopposed.  Dkt. No. 18.  The Court will grant some of the requests but

11   deny others.

12        **i.    Legal Standard**

13        In *Khoja v. Orexigen Therapeutics*, the Ninth Circuit clarified the judicial notice rule and

14   incorporation by reference doctrine.  *See* 899 F.3d 988 (9th Cir. 2018).  Under Federal Rule of

15   Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute because

16   it … can be accurately and readily determined from sources whose accuracy cannot reasonably be

17   questioned."  Fed. R. Evid. 201(b)(2).  Accordingly, a court may take "judicial notice of matters of

18   public record," but "cannot take judicial notice of disputed facts contained in such public records."

19   *Khoja*, 899 F.3d at 999 (citation and quotations omitted).  The Ninth Circuit has clarified that if a

20   court takes judicial notice of a document, it must specify what facts it judicially noticed from the

21   document.  *Id*. at 999.  Further, "[j]ust because the document itself is susceptible to judicial notice

22   does not mean that every assertion of fact within that document is judicially noticeable for its

23   truth."  *Id*.  As an example, the Ninth Circuit held that for a transcript of a conference call, the

24   court may take judicial notice of the fact that there was a conference call on the specified date, but

25   may not take judicial notice of a fact mentioned in the transcript, because the substance "is subject

26   to varying interpretations, and there is a reasonable dispute as to what the [document] establishes."

27   *Id*. at 999–1000.

28        Separately, the incorporation by reference doctrine is a judicially created doctrine that

United States District Court
Northern District of California

4

allows a court to consider certain documents as though they were part of the complaint itself. *Id.* at 1002. This is to prevent plaintiffs from cherry-picking certain portions of documents that support their claims, while omitting portions that weaken their claims. *Id.* Incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of plaintiff's claim." *Khoja*, 899 F.3d at 1002. However, "the mere mention of the existence of a document is insufficient to incorporate the contents" of a document. *Id.* at 1002. And while a court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss … it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.*

### ii.   Analysis

Defendant requests that the Court consider Exhibits A-F to the Declaration of Jasmine W. Wetherell ("Wetherell Decl."). *See* Dkt. No. 18.

Exhibit A (Dkt. No. 17-2 at 1–5) contains representations of the Products' front and back labels. Since "[P]laintiff refers extensively to the [labels]" in his complaint and "the [labels] form[] the basis of [P]laintiff's claim," the Court finds that it can properly consider the product labels provided by Defendant under the incorporation by reference doctrine. [1] *Khoja*, 899 F.3d at 1002; *see also Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1087 (N.D. Cal. 2017) ("[C]ourts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging.") (internal quotations omitted)).

Exhibit B (Dkt. No. 17-2 at 6–28) consists of a copy of the full ConsumerLab.com article containing the test results referred to by Plaintiff in paragraphs 3, 17, 18, 19, 20, 21, and 22 of his complaint. The Court's consideration of Exhibit B is similarly appropriate under the incorporation by reference doctrine given that Plaintiff's complaint expressly and repeatedly references this ConsumerLab.com report, and because the report's findings concerning cadmium content form the basis of Plaintiff's theory of liability. *See Khoja*, 899 F.3d at 1002.

Exhibit C (Dkt. No. 17-2 at 29–31) contains copies of the front labels of two Bob's Red

---

[1] For ease of reference, the Court refers to the PDF pages rather than the document's internal pagination unless otherwise noted.

United States District Court
Northern District of California

Mill products: Super-Fine Almond Flour and Coarse Grind Cornmeal.  According to the Wetherell Declaration, images of these products' packaging is available on and was downloaded from Defendant's website.  Defendant urges that since the images were sourced from a publicly available and verifiable website, judicial notice of them is permitted under Rule 201 given that "the[ir] authenticity and accuracy . . . cannot be reasonably questioned."  Dkt. No. 18 at 4.  The Court agrees.

Finally, Exhibits D, E, and F are state court judicial opinions issued in other cases that Defendant cites to support its motion to dismiss.  Specifically, Exhibit D is a publicly available judicial opinion issued by the Superior Court of the District of Columbia on June 1, 2022, in *GMO Free USA v. Cover Girl Cosmetics*, Case No. 2021 CA 004786B.  *See* Dkt. No. 17-2 at 32–40.  In addition, Exhibit E is a publicly available Statement of Decision issued by the Alameda County Superior Court on July 31, 2013, in *Envtl. Law Found. v. Beech-Nut Nutrition Corp.*, Case No. RG11597384.  *See id.* at 41–67.  Finally, Exhibit F is a publicly available judicial opinion issued by the California Court of Appeal, First District, on March 17, 2015, in *Envtl. Law Found. v. Beech-Nut Nutrition Corp.*, Case No. A139821.  *See id.* at 69–83.  While the Court agrees that the accuracy of these state judicial records cannot reasonably be disputed, judicial notice of them is unnecessary, and Defendant's request is denied.  Defendant has cited the cases in its briefing, and the Court will consider them just as it considers other referenced authorities.

In sum, the Court **GRANTS** Defendant's request that the Court find Exhibits A, B, and C judicially noticeable and/or incorporated by reference, but **DENIES** that request as to Exhibits D, E, and F.  Dkt. No. 18.

### B.  Motion to Dismiss

#### i.  Standing

Defendant argues that Plaintiff lacks standing to bring his claims, which is a jurisdictional challenge assessed under Rule 12(b)(1).  Specifically, Defendant argues that Plaintiff (1) did not suffer an injury-in-fact, (2) does not have standing to sue for products he did not purchase, and (3) has not adequately alleged a risk of future harm to justify his request for injunctive relief.  The Court finds these arguments unpersuasive and will deny Defendant's motion to dismiss Plaintiff's

1   case on standing grounds.

2               a.   <u>Injury-in-Fact</u>

3        First, Defendant suggests Plaintiff has not adequately alleged injury-in-fact, and therefore

4   lacks Article III standing.  Mot. at 13–16.  The Court disagrees.

5        Injury is one of the three "irreducible minimum" components of standing.  *Lujan v. Defs.*

6   *of Wildlife*, 504 U.S. 555, 590, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  "A 'quintessential injury-

7   in-fact' occurs when plaintiffs allege that they 'spent money that, absent defendants' actions, they

8   would not have spent."  *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1172 (N.D. Cal. 2022)

9   (citing cases).  Here, Plaintiff alleges that "[a]t the time of [his] purchases, he did not know the

10  Products contained high levels of cadmium," and that he "would not have purchased the Product

11  had he known the Product contains high levels of cadmium, a substance which is known to be

12  hazardous to human health."  Compl. ¶¶ 28, 30.  Plaintiff alleges that as a result, "[he] suffered in

13  fact when he spent money to purchase the Product he would not have purchased absent

14  Defendant's misconduct."  *Id*. ¶ 28.  Plaintiff further alleges that "[h]ad [he] and putative class

15  members known about the high levels of cadmium, they would not have purchased the Products or

16  would have paid less for the Products."  While Defendant frames this allegation as "threadbare,"

17  Mot. at 15, Plaintiff's allegation that he "would not have bought the product but for the

18  misrepresentation . . . is sufficient to allege causation . . . [and] to allege economic injury."

19  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) (quoting *Kwikset Corp. v.*

20  *Superior Court*, 51 Cal.4th 310, 330 (2011)).

21       Defendant's arguments to the contrary are misplaced.  Defendant maintains that because

22  Plaintiff "was not promised anything that he did not receive" and was not "exposed to false

23  information that lured him into buying the product," he cannot have been injured.  Reply at 7.  But

24  Plaintiff's entire suit is premised on the notion that he *was* promised something he did not receive

25  (i.e. flaxseed products without high levels of cadmium), and that he *was* exposed to false

26  information on the product packaging (i.e. representations that created the net impression that

27  Products were healthy and did not contain toxic ingredients like cadmium).  Whether Plaintiff's

28  theory of misrepresentation is actionable is a different question (and ultimately answered in the

United States District Court
Northern District of California

negative), but Plaintiff has pled that Defendant made material misrepresentations and omissions about the product that ultimately caused him to "[pay] more than he . . . actually valued the product." *Kwikset Corp.*, 51 Cal.4th at 330.

Since this is sufficient for articulating economic injury under our authorities, the Court **DENIES** Defendant's motion to dismiss on this ground.[2]

### b. Standing for Products Plaintiff Did Not Purchase

The complaint makes clear that Plaintiff only purchased one of the four Products at issue – the Organic Whole Ground Flaxseed Meal – on approximately two occasions. Compl. ¶ 28. Defendant argues that Plaintiff lacks standing for the Products that he did not personally purchase (the Organic Golden Flaxseed Meal, Whole Ground Flaxseed Meal, and Golden Flaxseed Meal) (collectively, the "Unpurchased Products") because he cannot have been economically injured by products he did not purchase. Mot. at 16–17. The Court again disagrees.

In the Ninth Circuit, "[t]here is no controlling authority on whether [p]laintiffs have standing for products they did not purchase." *In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, 20-CV-03184-HSG, 2021 WL 3191733, at *2 (N.D. Cal. July 28, 2021) (citing *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012)). "The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller*, 912 F. Supp. 2d 861 at 869; *see also Papasan v. Dometic Corp.*, 2017 WL 4865602, at *8 (N.D. Cal. Oct. 27, 2017); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236, at *12–13 (N.D. Cal. Oct. 2, 2013). If the products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012). However, "[w]here the alleged misrepresentations or accused products are dissimilar, courts tend to dismiss claims to the extent

---

[2] Defendant argues that injury-in-fact is absent for an additional reason: that Plaintiff has "not sufficiently or plausibly alleged that the Product he actually purchased contained cadmium." Mot. at 15. Though Defendant frames this as a standing argument, the Court finds that it goes to the sufficiency of Plaintiff's claim, and addresses it as such in Section III.B.2.a.1.

1    they are based on products not purchased." *Miller*, 912 F. Supp. 2d at 870.

2          Courts have found substantial similarity for purposes of standing where: (1) the products

3    are physically similar; (2) the differences between the products are immaterial because the legal

4    claim and injury to the customer is the same; and (3) both the products and the legal claims and

5    injury are similar. *See Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL

6    1024182, at *4–8 (N.D. Cal. Mar. 13, 2014). This Court has found that "the best approach is one

7    which focuses on whether the type of claim and consumer injury is substantially similar as

8    between the purchased and unpurchased products." *Zimmerman v. L'Oreal USA, Inc.*, No. 22-

9    CV-07609-HSG, 2023 WL 4564552, at *3 (N.D. Cal. July 17, 2023) (quoting *id*. at *8). "That

10   determination necessarily focuses on whether the resolution of the asserted claims will be identical

11   between the purchased and unpurchased products." *Id*. (internal quotation omitted).

12         The Court finds that the product that Plaintiff purchased – Organic Whole Ground

13   Flaxseed Meal – is substantially similar to the Unpurchased Products because "all products were

14   identical in every respect that is important to" his claims. Opp. at 19 (citing *Brown v. Nature's

15   Path Foods, Inc.*, No. 21-CV-05132-HSG, 2023 WL 2699978, at *5 (N.D. Cal. Mar. 29, 2023)).

16   Namely, the Products involve the same sole ingredient (flaxseeds), feature virtually the same

17   representations on substantially identical packaging, and all allegedly have "high levels" of

18   cadmium. *See* Dkt. No. 17-2, Ex. A. Because of this, the resolution of claims made as to the

19   Unpurchased Products will necessarily track those made as to the purchased product. Defendant

20   has not argued to the contrary, but rather reiterates its position that whether "unpurchased products

21   contain[] identical, similar, or dissimilar representations does not alter the fact that they caused

22   Plaintiff no harm." Reply at 9 (citing *McCracken v. KSF Acquisition Corp.*, No. 5:22-CV-01666-

23   SB-SHK, 2022 WL 18932849, at *2 (C.D. Cal. Dec. 15, 2022)). While they may not have injured

24   *him*, Plaintiff brings the claims on behalf of yet-unnamed class members who were supposedly

25   injured, which Ninth Circuit authority does not foreclose.

26         Defendant may re-raise this argument at the class certification phase, but for now, the

27   Court finds that Plaintiff has standing to pursue claims relating to the Unpurchased Products and

28   **DENIES** Defendant's motion to dismiss on this basis.

United States District Court
Northern District of California

9

1

2

3

4

5

6

7

8

9

10

11

12

13

United States District Court
Northern District of California

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

c. Injunctive Relief

Defendant also argues that Plaintiff lacks standing to seek injunctive relief. On this point, the Court also disagrees.

To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation omitted). Wronged plaintiffs are entitled to injunctive relief only if they can show that they face a "'real or immediate threat . . . that [they] will again be wronged in a similar way.'" *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (omission in original) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). In the context of false advertising cases, the Ninth Circuit has confirmed that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase[.]" *Davidson*, 889 F.3d at 969. *Davidson* identifies two ways a plaintiff may establish the required risk of future harm: (1) "the consumer's plausible allegations that [they] will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to"; or (2) "the consumer's plausible allegations that [they] might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as [they] may reasonably, but incorrectly, assume the product was improved." *Id*. at 969–70.

Here, Plaintiff alleges that he "continues to see the Products for sale at retail stores in California and desires to purchase the Products again if the Products did not contain high levels of cadmium," but, "as a result of Defendant's ongoing misrepresentations and material omissions[,] is unable to rely on the Products' labeling when deciding in the future whether to purchase the Products." Compl. ¶ 29. Defendant argues that this allegation fails under *Davidson* because the fact that cadmium occurs naturally in flaxseed means that it "would be impossible to reformulate [the Products] in a way in which Plaintiff would be willing to purchase it." Mot. at 17. But that impossibility is not manifestly clear to the Court, as it is conceivable that the *amount* of cadmium could be reduced through processing or refinement techniques. After all, as alleged "many" of the

products tested by ConsumerLab.org from other brands had lower cadmium levels than Defendant's products, *see* Compl. ¶ 37, suggesting that reducing the amount (as opposed to presence) of cadmium is possible. Defendant, for its part, has not suggested that the amount of cadmium found in other brands' products is randomly as opposed to intentionally achieved, for example.

The Court therefore concludes that Plaintiff's allegation sufficiently mirrors *Davidson's* second scenario to confer standing for injunctive relief. Other courts considering products allegedly tainted with heavy metals have come out similarly on this question. *See, e.g.*, *Grausz v. Hershey Co.*, No. 23-CV-00028-AJB-SBC, 2023 WL 6206449, at *5 (S.D. Cal. Sept. 11, 2023); *In re Plum Baby Food Litig.*, No. 4:21-CV-913-YGR, 2022 WL 16640802 (N.D. Cal. Jan. 12, 2022), reconsideration denied, No. 4:21-CV-00913-YGR, 2023 WL 3493319 (N.D. Cal. May 3, 2023); *Bland v. Sequel Nat. Ltd.*, No. 18-CV-04767-RS, 2019 WL 4658361 at *2 (N.D. Cal. Jan. 18, 2019).

Defendant's motion to dismiss Plaintiff's claims on this basis is accordingly **DENIED**.

### ii.   Failure to State a Claim

The Court now turns to the sufficiency of Plaintiff's allegations, and concludes that Plaintiff has not plausibly pled a claim for relief.

#### a.   CLRA and UCL (Fraudulent Prong) Claims

Defendant alleges that Plaintiff has failed to plead an actionable claim under the CLRA and the UCL's fraudulent prong since he has not adequately alleged (1) that the Representations are misleading, or (2) that Defendant has a duty to disclose the cadmium levels of the products. The Court agrees.

##### 1.   Misrepresentations

The parties agree that the "reasonable consumer test" governs Plaintiff's CLRA and UCL claims (Mot. at 18; Opp. at 20), but disagree on how the test applies to these facts.

Under this "reasonable consumer test," a plaintiff must "show that members of the public are likely to be deceived" by the challenged representations. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation and citation omitted). This requires more

United States District Court
Northern District of California

than a "mere possibility" that Defendant's labels "might conceivably be misunderstood by some few consumers viewing [the labels] in an unreasonable manner." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Rather, it must be "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id*.

Here, Plaintiff alleges that the Representations – including but not limited to "You Can See Our Quality," "To Your Good Health," "Non-GMO," "Gluten Free," "contain a wealth of nutrients," "amazing nourishment," and "promote good health" – "give reasonable consumers the impression that the Products are healthy and made with quality ingredients and do not contain unlawful levels of heavy metals." Compl. ¶ 12. This impression, they allege, is misleading because the Products do contain "unsafe and unlawful levels of cadmium." *Id*. ¶ 1. Defendant argues that the Representations "cannot plausibly be interpreted as a representation about the alleged cadmium content of the Products," and are non-actionable puffery in any event. Mot. at 20.

In the Court's view, the Representations can be divided into three groups. The first group consists of factual statements that in other contexts could be actionable if alleged to be false or misleading, but are not plausibly alleged to be false and misleading here. The statements in this group include "Non-GMO," "Gluten-Free," and "Organic." While Plaintiff pleads that the statements in Group One misleadingly contribute to an overall imprimatur of healthiness, the Court finds this reading of these discrete, factual claims implausibly extrapolated. *See Andrade-Heymsfield v. Danone US, Inc.*, 2019 WL 3817948, at *9 (S.D. Cal. Aug. 14, 2019) ("[A]llegations of deception must be assessed according to what the advertisement or label depicts and actually says, and not allegations of implied meaning."). Where Plaintiff has not alleged that the statements misstate the truth of the relevant product characteristic (i.e. the gluten content or organic composition), as opposed to the unstated, extrapolated characteristic (i.e. "healthiness"), they do not support his theories. The second group is comprised of non-actionable puffing statements, and includes the claim "You Can See Our Quality." From the label, it is clear that this

statement, positioned beneath a transparent window on the front label, is "a playful way of encouraging consumers to visually assess the package contents," and does not plausibly communicate anything about the overall healthiness of the Products. Mot. at 20. The third group includes the remaining Representations, such as "contain a wealth of nutrients," "amazing nourishment," and "To Your Good Health." The statements in Group Three, when viewed in the light most favorable to Plaintiff, as they must be at this stage, could conceivably communicate something about the Products' general healthiness.

But even assuming without deciding that the Representations in Group Three *do* convey that the Products are healthy and therefore do not contain unhealthy amounts of toxins like cadmium, Plaintiff's argument is flawed in that it fails to plausibly allege that the levels of the cadmium *in the Products* render them unhealthy.[3] Plaintiff notably has not pled that the presence of cadmium at *any* level is unhealthy; his allegations instead focus on the risks of the "high" levels of cadmium found in the Products. But he does not allege any plausible standard for what constitutes "high." In discussing the litany of apparent cadmium-related health risks, the allegations do not make any connection between the levels of cadmium at issue in the cited scientific studies and the amounts of cadmium allegedly contained in the Products.[4] Compl. ¶¶ 23–27. Without this connection, there is no plausible basis to conclude that the health risks discussed could result from consuming the per-serving amount of cadmium contained in the Products.

In the absence of a standard for what constitutes "high" from the scientific literature, Plaintiff seeks to rely on the Maximum Allowable Dose Levels ("MADLs") from Proposition 65 for that standard. The MADLs establish a limit for certain chemicals above which products

---

[3] Because the Court must construe the pleadings in the light most favorable to Plaintiff at this stage, the Court will interpret Plaintiff's complaint as pleading that all four of the Products – even those not tested by ConsumerLab.org – contain cadmium in levels that exceed the MADL. That said, in any amended complaint, Plaintiff should fulsomely allege the factual basis for concluding that results of the tested products are indicative of the cadmium content of the untested products.
[4] In fact, as Defendant notes, at least one of Plaintiff's cited sources actually furnishes a considerably *higher* health cutoff. According to the paper cited at Footnote 16 of the complaint (*Adverse Health Effects of Chronic Exposure to Low-Level Cadmium in Foodstuffs and Cigarette Smoke*), the World Health Organization has determined that the tolerable daily intake level for cadmium is 70 micrograms per day.

1    containing those chemicals must include a warning label pursuant to California's Safe Drinking

2    Water and Toxic Enforcement Act of 1986 ("Proposition 65"), Cal. Health & Safety Code §

3    25249.5, et seq.  Compl. ¶ 19.  Plaintiff argues that because the MADL for cadmium exposure by

4    the oral route is 4.1 micrograms per day, the fact that the Products contain 5.5 and 6.1 micrograms

5    per serving renders them unhealthy.  But the complaint does not explain why the MADL is the

6    right reference point if Plaintiff's concern is healthfulness, as opposed to Proposition 65

7    compliance.  Why should the MADLs for *labeling* purposes be understood as equivalent with a

8    cadmium cut-off for *health* purposes?  Plaintiff's pleadings do not furnish an answer.  While the

9    Court cannot say as a matter of law that there is no connection between the MADLs and a

10   threshold for unhealthy cadmium exposure, the Court also cannot assume that there *is* one absent

11   factual allegations to that effect, especially where Plaintiff's own sources indicate that "[e]xposure

12   at a level *1,000 times greater than the MADL* is expected to *have no observable effect*."  *See* Opp.

13   at 12, n.1 (emphasis added).

14           In short, Plaintiff has not plausibly alleged that the presence of 5.5 or 6.1 micrograms per

15   serving of flaxseed product renders the Products unhealthy or pose any health risk.  *See In re*

16   *Trader Joe's Company Dark Chocolate Litigation*, No. 3:23-CV-0061-RBM-KSC, 2024 WL

17   1319725, at *11 (S.D. Cal. Mar. 27, 2024) ("[T]here is a disconnect in the CAC between

18   Plaintiffs' allegations about the potential harms posed by Heavy Metals as a general matter and

19   whether these Heavy Metals are unreasonably hazardous at the particular levels in the specific

20   Products at issue in this case."); *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1079 (N.D. Cal.

21   2012) ("While Plaintiff makes general allegations that hexavalent chromium is unsafe, she does

22   not plead with the required particularity what level of hexavalent chromium makes Dexatrim Max

23   Complex 7 unsafe.").  Absent allegations explaining why cadmium poses a health threat *at the*

24   *levels that it appears in the Products* rather than at undefined "high" levels, the complaint fails to

25   plead that the Product's label representations – even assuming they give rise to an impression of

26   healthfulness – are misleading, especially under the applicable Rule 9(b) standard.  Accordingly,

27   the Court **GRANTS** Defendant's motion to dismiss Plaintiff's affirmative deception claims under

28   the CLRA and UCL.

1

2. *Omissions*

2        In addition to alleging that the affirmative statements on the Products misled him, Plaintiff

3    alleges that Defendant had a duty to disclose the level of cadmium in the Products.  Defendant

4    contends that Plaintiff's claim fails because it had no duty to disclose the presence of cadmium,

5    making the resulting omission nonactionable.  Defendant has the better of the argument.

6        To plausibly allege a fraudulent omission, the omission must either (1) "be contrary to a

7    representation actually made by the defendant," (a "partial omission") or (2) "an omission of a fact

8    the defendant was obliged to disclose" (a "pure omission").  *Hodsdon v. Mars, Inc.*, 891 F.3d 857,

9    865 (9th Cir. 2018) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835

10    (2006)).

11        Plaintiff alleges both partial and pure omissions.  First, Plaintiff argues that he properly

12    alleges a partial omission because "Defendant failed to disclose that the Products contain cadmium

13    – a substance that causes adverse health effects – while at the same time representing that the

14    products are healthy and safe to consume."  Opp. at 26.  To be clear, the alleged omission

15    concerning cadmium levels in no way directly contradicts or is inconsistent with any of the actual

16    Representations, taken literally (e.g. "Non-GMO," "Organic," "Gluten Free," omega-3s "promote

17    good health").  But even considering the purported *net impression* of the Representations – that

18    the Products are healthy – does not move the needle for Plaintiff.  Because the Court already

19    determined that Plaintiff has not adequately alleged that the Products are *not* healthy or safe to

20    consume on account of the alleged cadmium content, it finds that Defendant's omission of the

21    cadmium disclosure is not actionable.  In other words, Plaintiff has not adequately alleged that a

22    disclosure of the Product's purported cadmium levels would be "contrary" to the net impression of

23    healthiness supposedly generated by the Representations.

24        Next, the Court considers whether Defendant had a duty to disclose the presence of

25    cadmium in the Products under a "pure omissions" theory.  *See Wilson v. Hewlett-Packard Co.*,

26    668 F.3d 1136, 1141–43 (9th Cir. 2012).  A "defendant only has a duty to disclose when either (1)

27    the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to

28    the product's function,' and the plaintiff alleges one of the four *LiMandri* factors."  *Hammerling v.*

*Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022) (quoting *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1102 (N.D. Cal. 2021); *see also Hodsdon*, 891 F.3d at 864. "The *LiMandri* factors are (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." *Hammerling*, 615 F. Supp. 3d at 1085 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).

The Court concludes that, on the facts alleged, Defendant did not have a duty to disclose the fact that the Products purportedly contain cadmium. First, the Court finds that Plaintiff has not plausibly plead that the cadmium allegedly contained in the Products creates an unreasonable safety hazard. For the reasons already described, Plaintiff has not pled that the level of cadmium found in the Products is liable to cause "negative health effects in humans including developmental and reproductive problems and an increased risk of certain cancers." Compl. ¶ 34. Plaintiff's theory that the Products he purchased are a safety hazard "rests solely on the fact that the Products tested by ConsumerLab.com . . . contained cadmium in amounts slightly exceeding California's Proposition 65 [MADL] for cadmium." Mot. at 22. But Plaintiff has not plausibly alleged that Proposition 65 MADLs "indicate the thresholds at which a particular substance poses a danger to human health." *Id*.

Second, the Court finds that, among other things, Plaintiff has not adequately pled that the presence of cadmium is "central to the product's function" under the second test. To satisfy the "central function" prong of this test, Plaintiff must establish that the defect renders the product "incapable of use by any consumer." *Hodsdon*, 891 F.3d at 864; *see also In re Plum Baby Food Litig.*, 2024 WL 1354447 at *6. Plaintiff has not done so. The alleged presence of cadmium notwithstanding, Plaintiff has not plausibly pled that the Products have ceased to function as a food, or even more specifically as flaxseed. While the failure to satisfy the "central function" prong resolves the question of whether Defendant has a duty to disclose, the Court briefly further observes that (1) the materiality prong is better addressed on a factual record rather that at the motion to dismiss stage, and that (2) Plaintiff's allegations concerning Defendant's supposedly

1  exclusive knowledge of cadmium are implausible in light of the publicly accessible nature of

2  ConsumerLab.org's testing.

3      Since Plaintiff's allegations are insufficient to establish that Defendant had a duty to

4  disclose the levels of cadmium in the Products, the Court **GRANTS** Defendant's motion to

5  dismiss Plaintiff's claims arising under an omissions theory.

6      a.  Breach of Implied Warranty

7      Defendant contends that Plaintiff fails to state a claim for breath of implied warranties, and

8  the Court agrees.

9      "In cases involving human food, a party can plead that a product violates the implied

10  warranty of merchantability through allegations that the product was unsafe for consumption,

11  contaminated, or contained foreign objects." *Barnes v. Nat. Organics, Inc.*, No.

12  EDCV22314JGBPLAX, 2022 WL 4283779, at *8 (C.D. Cal. Sept. 13, 2022) (citing *Thomas v.*

13  *Costco Wholesale Corp.*, 2014 WL 5872808, at *3 (N.D. Cal. Nov. 12, 2014)).

14      For the reasons previously stated, the Court finds that Plaintiff has not plausibly pled that

15  the Products are unsafe for consumption because Plaintiff fails to allege that the level of cadmium

16  allegedly present in the Products constitute a level at which the complained-of health risks occur.

17  Plaintiff's repeated incantation of "high," "unsafe," and "unlawful" levels of cadmium is not a

18  sufficient substitute for factual allegations tying the level of cadmium in the Products to the

19  supposed negative health risks and outcomes flowing from elevated exposure.  The Court

20  consequently cannot conclude that Plaintiff has pled that the Products were "unsafe for

21  consumption."

22      Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's breach of

23  implied warranty claim.

24      b.  UCL – Unfair & Unlawful Prongs

25      Defendant moves to dismiss Plaintiff's claims under the UCL's unfair and unlawful

26  prongs.  The Court agrees that these claims are insufficiently pled, and will dismiss them.

27      *1.  Unfair Prong*

28  The California Supreme Court has defined "unfair" conduct in unfair competition law

1    cases to mean "conduct that threatens an incipient violation of an antitrust law, or violates the

2    policy or spirit of one of those laws because its effects are comparable to or the same as a violation

3    of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc.*

4    *v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). In his opposition, Plaintiff argues

5    that Defendant's supposed failure to test the Products for "harmful heavy metals" before selling

6    them to consumers is a business practice "that is immoral, unethical, oppressive, unscrupulous,

7    and substantially injurious to consumers," and accordingly violative of the UCL's unfair prong.

8    Opp. at 31.

9         Defendant is correct that this argument did not appear in the Complaint. Mot. at 18; *see*

10   Compl. ¶ 72 (alleging that Defendant committed "unfair" business acts or practices by: "(1)

11   engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and

12   the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive,

13   unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3)

14   engaging in conduct that undermines or violates the intent of the consumer protection laws alleged

15   herein.). But even had Plaintiff properly alleged it, it fares no better than Plaintiff's other theories

16   of liability under the fraudulent prong (which must be rejected since the Court has not found

17   Plaintiff's claims concerning misleading labeling well-pled). The notion that Defendant does not

18   test the Products for heavy metals appears to be wholly based on a statement apparently made by a

19   Bob's Red Mill representative in response to a query from a ConsumerLab member. Compl. ¶ 22.

20   The statement said, in part: "Bob's Red Mill products comply with all applicable laws and

21   regulations, those laws and regulations do not require us to conduct our own testing for heavy

22   metals." *Id*. Based on this statement, Plaintiff alleges that Defendant "seemingly admitted" that

23   Bob's Red Mill does not test the Products for heavy metals, and that the lack of testing is an

24   "unfair" business practice. *Id*. ¶ 4, 22. Putting aside the fact that Plaintiff's allegation allows for

25   the possibility that Defendant does in fact test its Products (and certainly the possibility that the

26   Products are tested, but not by Defendant), Plaintiff has not adequately alleged that any failure by

27   Defendant to test for heavy metals is "comparable to or the same as a violation of the law, or

28   otherwise significantly threatens or harms competition." The Court accordingly **GRANTS**

United States District Court
Northern District of California

1    Defendant's motion to dismiss Plaintiff's claims under the "unfair" prong of the UCL.

2                    *2.   Unlawful Prong*

3           Finally, Plaintiff alleges various violations under the unlawful prong of the UCL.  Compl.

4    ¶ 71.  Specifically, he alleges violations of California Civil Code sections 1709, 1711, 1770(a)(5),

5    (7), (9) and (16), California Business & Professions Code section 17500 et seq., and California's

6    Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"), Cal. Health & Safety

7    Code § 25249.5, et seq), and common law breach of implied warranties.  *Id*.  None of these

8    violations are actionable as pled.  First, Plaintiff makes no allegations specific to California Civil

9    Code sections 1573, 1709, and 1711, or California Business & Professions Code section 17500 et

10   seq.  Plaintiff identifies these provisions for the first and only time Paragraph 71, when he

11   summarily lists the predicate violations without alleging their elements or how Defendant's

12   conduct meets them.  As a result, the Court finds these violations inadequately pled.  Second,

13   Plaintiff cannot rely on his warranty claim or CLRA claim as predicate violations of the UCL's

14   unlawful prong given that he has not pled sufficient facts to support those claims.  *See Stewart v.*

15   *Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1151 (S.D. Cal. 2021) ("When a statutory claim fails, a

16   derivative UCL claim also fails.") (internal quotations omitted).

17          Lastly, Plaintiff's effort to allege that Defendant committed unlawful business acts by

18   violating Proposition 65 must fail, since "[a] plaintiff cannot sidestep [Proposition 65's] [notice]

19   requirements by trying to use" consumer protection statutes to "plead around a claim that would

20   be barred under Proposition 65."  Mot. at 27 (citing *Harris v. R.J. Reynolds Vapor Co.*, No. 15-

21   CV-04075-JD, 2016 WL 6246415, at *2 (N.D. Cal. Sept. 30, 2016)); *see also In re Vaccine Cases*,

22   134 Cal. App. 4th 438, 459 (2005) ("[P]laintiffs cannot evade the requirement of pre-suit 60–day

23   notice in Proposition 65 by repleading their cause of action as one for violation of the Unfair

24   Competition Law.").  And if brought directly as a Proposition 65 action (as opposed to a UCL

25   claim based on a predicate Proposition 65 violation), Plaintiff's claim surely *would* be barred

26   given that he fails to plead compliance with Proposition 65's pre-suit requirements.  *See In re*

27   *Vaccine Cases*, 134 Cal. App. 4th at 456.  Plaintiff does not meaningfully argue to the contrary: in

28   fact, he inexplicably appears to imply that he is not even alleging a direct Proposition 65 violation.

*See* Opp. at 28, n.3 ("Plaintiff is not bringing a Proposition 65 action [and] is not required [to] plead 'facts to show that, based on consumption patterns, the Products cause exposures exceeding the MADL.'"); 32 ("While Plaintiff mentions the MADLs in his complaint, 'briefly mentioning a Proposition 65 safe harbor level is not synonymous with claiming a specified cause of action for a violation of Proposition 65.'").  Since this claim is not even a "disguised" effort to enforce Proposition 65 without complying with that provision's requirements, the Court must dismiss it.

In sum, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's claims under the UCL's unlawful prong.

## IV.    CONCLUSION

The Court **GRANTS IN PART and DENIES IN PART** Defendant's motion to dismiss, Dkt. No. 17, and **GRANTS IN PART and DENIES IN PART** the associated requests for judicial notice.  Dkt. No. 18.  Since the Court cannot conclude that amendment would be futile, however, dismissal is with leave to amend.  Any amended complaint is due within 21 days of this order.

The Court further **SETS** a telephonic case management conference on June 18, 2024, at 2:00 p.m, and **DIRCTS** the parties to submit a joint case management statement by June 11, 2024. All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929

Passcode:  6064255

All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the courtroom deputy.  For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.

**IT IS SO ORDERED.**

Dated:   4/16/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California